UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

BARRY HOBSON,

    Plaintiff,

v.

LOCAL 689, AMALGAMATED TRANSIT
UNION, AFL-CIO,

    Defendant.

Civil Action No. TDC-23-2405

**MEMORANDUM OPINION**

Plaintiff Barry Hobson has filed this civil action against Defendant Local 689, Amalgamated Transit Union, AFL-CIO ("Local 689"), alleging employment discrimination based on sex, sexual orientation, and disability, as well as retaliation, in violation of federal, state, and county laws; a violation of a Maryland state law relating to unpaid wages; and common law claims of breach of contract and invasion of privacy. Local 689 has filed a Motion for Partial Summary Judgment on the invasion of privacy claim, which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

From November 2017 to August 2021, Plaintiff Barry Hobson worked for Local 689, the labor union for the Washington Metropolitan Area Transit Authority ("WMATA"), as the executive assistant to the president of Local 689. Hobson was hired by Jackie Jeter, the former president of Local 689, and then worked for Raymond Jackson from January 1, 2019, when Jackson became president of Local 689, until Hobson's termination in August 2021.

During the entire period of Hobson's employment at Local 689, Hobson was HIV-positive. According to Hobson, he has at all times intended to keep his HIV-positive status "private and confidential" and did not consent to the release of his HIV-positive status to others, including members of Local 689, its staff, or its management. Hobson Aff. ¶¶ 2-3, Opp'n Ex. 2, ECF No. 24-2. The fact of Hobson's HIV-positive status was contained in the files of the Transit Employees' Health and Welfare Plan ("TEHW"), a third-party administrator of a health and welfare plan that provides benefits to Local 689 members who work for WMATA. TEHW is governed by its Board of Trustees ("the Board") comprised of three members appointed by WMATA and three members appointed by Local 689, with a WMATA-appointed member serving as the Board's president and the Local 689 president serving as the Board's secretary. Hobson's HIV-positive status was contained in his life insurance application, which was retained in a file by TEHW and is considered a medical record protected under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d–1320d-9 (2018).

In August 2021, Hobson was terminated by Raymond Jackson. In November 2021, Hobson filed a charge of discrimination with the United States Equal Employment Opportunity Commission and the Prince George's County Office of Human Rights. At some point after his termination, before March 2022, Tonya Jackson, the executive director of TEHW at that time, became aware that a TEHW employee, Bertha Villatoro, had accessed Hobson's records without authorization. Specifically, after discovering Hobson's HIV-positive status in the life insurance application contained in the TEHW records, Villatoro disclosed that status to Tonya Jackson. In March 2022, Tonya Jackson told Raymond Jackson, on multiple occasions, about Villatoro's unauthorized access of Hobson's records. Raymond Jackson did not appear concerned about this information. He also acknowledged to Tonya Jackson that he was having a romantic relationship

with Villatoro. Tonya Jackson later reported the unauthorized access to the TEHW Board of Trustees during an executive session.

According to Tonya Jackson, Villatoro talked about her unauthorized access of Hobson's records in the TEHW break room with three to four other TEHW employees, including Tanya Billups. According to Hobson, on or about June 30, 2023, he was contacted by three Local 689 officials or members regarding an email that apparently disclosed his HIV-positive status. As of November 21, 2023, at least 15 individuals have contacted Hobson about his HIV-positive status, including Local 689 members, staff, and management. He had not previously disclosed his HIV-positive status to any of them.

Hobson filed the present action in the Circuit Court for Montgomery County, Maryland on September 6, 2022. In the presently operative Second Amended Complaint ("the Complaint"), filed on August 17, 2023, Hobson asserted the following claims arising from his termination from Local 689 and its aftermath: in Counts 1-3, claims of employment discrimination based on sex, sexual orientation, and a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20–606(a)(1), 20–611 (West 2021), and a Prince George's County ordinance that prohibits employment discrimination, Prince George's Cnty., Md. Code ("PGC Code") § 2-222 (2022); in Count 4, a claim of retaliation, in violation of Title VII, 42 U.S.C. § 2000e-3(a), the MFEPA, Md. Code Ann., State Gov't § 20–606(f), PGC Code § 2-222, and PGC Code § 2-209; in Count 5, a claim of disability discrimination, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), the MFEPA, Md. Code Ann., State Gov't § 20-606(a)(1), and PGC Code § 2-222; in Count 6, a claim of invasion of privacy; in Count 7, a claim of breach of contract; and in Count 8, a claim of unpaid wages, in violation of the

Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl. § 3-502 (West 2016). In his invasion of privacy claim, Hobson attributed the publication of his HIV-positive status to Raymond Jackson, Villatoro, and Billups.

On September 1, 2023, Defendants removed the case to this Court. On October 14, 2023, pursuant to a motion filed by Hobson, the Court consolidated this case with *Hobson v. Local 689, Amalgamated Transit Union AFL-CIO*, No. TDC-21-2374, a case previously filed by Hobson against Local 689 for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (2018). Both cases are scheduled to be tried together.

## DISCUSSION

In its Motion for Partial Summary Judgment, Local 689 seeks summary judgment in its favor on the invasion of privacy claim. Local 689 argues that the record evidence establishes that there is no viable invasion of privacy claim because: (1) Villatoro and Billups are not employees of Local 689 such that their actions cannot be attributed to Local 689; (2) even if their actions were attributable to Local 689, they did not share Hobson's HIV-positive status with enough people to establish the element of publicity, as required for the invasion of privacy claim; (3) the record evidence establishes that Raymond Jackson did not publicize Hobson's HIV-positive status; and (4) the disclosed fact, Hobson's HIV-positive status, was not a highly offensive, private fact.

### I. Legal Standards

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson*

4

v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

Maryland recognizes a tort of invasion of privacy and has adopted the definition of the cause of action in the Restatement of Torts. *Lawrence v. A.S. Abell Co.*, 475 A.2d 448, 450-51 (Md. 1984). The Restatement identifies four different forms of the tort of invasion of privacy, including, as relevant here, the act of "unreasonable publicity given to the other's private life." *Id.* at 451 (quoting Restatement (Second) of Torts § 652(A) (Am. Law. Inst. 1977)). Liability for this form of invasion of privacy requires that (1) the defendant "g[ave] publicity to a matter concerning the private life of another"; and (2) "the matter publicized is of a kind which (a) [w]ould be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Hollander v. Lubow*, 351 A.2d 421, 425 (Md. 1976); *see Furman v. Sheppard*, 744 A.2d 583, 588 (Md. Ct. Spec. App. 2000).

## II. Local 689 Liability

In seeking dismissal of the invasion of privacy claim, Local 689 first argues that it is not liable because the Complaint fails to allege facts showing that either Local 689 or any of its employees engaged in the disclosure to others of the fact that Hobson is HIV-positive. As stated in the Complaint, the two individuals who allegedly accessed Hobson's records and disclosed to others the fact that he is HIV-positive were Bertha Villatoro and Tanya Billups. The record evidence, however, does not show that Billups publicized Hobson's HIV-positive status. More importantly, it is undisputed that at the relevant time, these two individuals were employees of

5

TEHW, not Local 689. As discussed above, TEHW is governed by its Board of Trustees, with half of the trustees appointed by WMATA and half appointed by Local 689. The president of the Board is a trustee appointed by WMATA. Although Local 689's president serves as the Board's secretary, Tonya Jackson, the former executive director of TEHW, has testified that Local 689 does not have fiduciary or operational control over TEHW, and that as executive director, she had the "responsibility to hire, discipline, and fire employees" of TEHW. T. Jackson Dep. at 95, Opp'n Ex. 1, ECF No. 24-1. It is also undisputed that Local 689 has never paid the salaries of TEHW employees, and that such employees do not report to Local 689. The record evidence therefore establishes that Local 689 is not vicariously liable for the actions of Villatoro based on her status as an employee of TEHW. *See Dhanraj v. Potomac Elec. Power Co.*, 506 A.3d 224, 226 (Md. 1986) (stating that under Maryland law, employers are vicariously liable for the tortious conduct of employees acting within the scope of the employment relationship).

Hobson nevertheless argues that Villatoro's accessing and disclosure of Hobson's HIV-positive status is attributable to Local 689 because the record evidence supports the conclusion that Villatoro, a member of Local 689, took these actions to benefit Raymond Jackson and Local 689. Hobson focuses on the fact that Raymond Jackson and Villatoro were having a romantic relationship and the allegations that Villatoro, a Local 689 member, disliked Hobson and had stated that she would use information she gained from her work at TEHW to benefit Local 689.

Hobson's argument, in effect, is that Villatoro, even though not a Local 689 employee, was an agent of Jackson and Local 689. "In an agency relationship, one person, the principal, can be legally bound by actions taken by another person, the agent." *Dickerson v. Longoria*, 995 A.2d 721, 735 (Md. 2010). Under Maryland law, an agency relationship may be established by actual or apparent authority. *Id.* Actual authority can be established by "written or spoken words or other

6

conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires [the agent] so to act on the principal's account." *Id.* (quoting *Citizens v. Md. Indust.*, 659 A.2d 313, 318 (Md. 1996)). Where a principal does not confer actual authority on the agent, apparent authority is established if: (1) the apparent principal created or acquiesced in the appearance that an agency relationship existed; (2) a third party believed that an agency relationship existed and relied on that belief in seeking the services of the apparent agent; and (3) the third party's belief and reliance were reasonable. *See Bradford v. Jai Med. Sys. Managed Care Org., Inc.*, 93 A.3d 697, 707 (Md. 2014). Under either actual or apparent authority, an agent "cannot enlarge the actual authority by [the agent's] own acts without some measure of assent or acquiescence on the part of [the] principal." *Dickerson*, 995 A.2d at 735 (quoting *P. Flanigan & Sons v. Childs*, 248 A.2d 473, 477 (Md. 1968)).

Here, the Court finds that there is no genuine dispute of material fact on whether Villatoro was acting as an agent of Local 689 when she disclosed Hobson's HIV-positive status. As to actual authority, though Villatoro was a member of Local 689, Hobson has cited no authority establishing that membership in a union, without more, renders someone an agent of that union. More specifically, there is no evidence in the record that Local 689, whether through Raymond Jackson or otherwise, took any action that conveyed to Villatoro instructions or even a stated desire that she engage in unauthorized access of Hobson's records or the disclosure of his HIV-positive status. While Tonya Jackson testified to multiple instances in which Villatoro accessed the medical information of Local 689 employees, including those of Hobson, she did not testify to any statement by Villatoro that she would use information gained from her work for TEHW to benefit Local 689, or to any actual or implied instruction by Raymond Jackson to Villatoro to access the medical information of any employee or to release such information. Indeed, Tonya Jackson

7

testified that the reason that Villatoro accessed Hobson's records was because Villatoro wanted to show that Tonya Jackson's predecessor as executive director of TEHW "was doing something that she was not supposed to do." T. Jackson Dep. at 50-51. Although Hobson points to evidence that Villatoro had stated that Local 689 has an interest in how TEHW conducts its activities, told others of her close ties to Raymond Jackson and Local 689, and at one point received from Raymond Jackson a document relating to Hobson's termination that she should not have received, these facts, even viewed in the light most favorable to Hobson, do not demonstrate words or conduct by a Local 689 official that would cause Villatoro to believe that Local 689 sought for her to access and disclose Hobson's HIV-positive status. *See Dickerson*, 995 A.2d at 735.

As for apparent authority, although Tonya Jackson testified that she believed that Villatoro was "leveraging her relationship with [Raymond] Jackson," including by telling others of her relationship with him, T. Jackson Dep. at 131-32, and that she told Villatoro that she was "giving the appearance that you are working on behalf of" Raymond Jackson, *id.* at 103, there was no evidence that Raymond Jackson took actions to create or acquiesce in the appearance that Villatoro was acting as a Local 689 agent, whether in relation to the disclosure of Hobson's HIV-positive status or otherwise. There is also no evidence that he was aware of her actions publicizing their relationship, and as discussed below, there is no evidence that Raymond Jackson was aware of the disclosure of Hobson's HIV-positive status at the time that it occurred. The Court therefore finds that there is insufficient evidence to support a finding that Villatoro had an agency relationship with Local 689 for purposes of the disclosure of Hobson's HIV-positive status.

Finally, although Hobson asserted in the Complaint that Raymond Jackson, the president of Local 689, also publicized Hobson's HIV-positive status, the record evidence is insufficient to support that claim. In his deposition, Raymond Jackson stated that he did not know that Hobson

is HIV-positive while Hobson was working for Local 689, only learned his status when Hobson filed a claim relating to his HIV-positive status, and has not disclosed that fact to anyone. Although Tonya Jackson has testified that she told Raymond Jackson that Villatoro had accessed Hobson's records at TEHW, she has not stated that she told Raymond Jackson about Hobson's HIV-positive status or that Villatoro had disclosed it, and she has denied that Raymond Jackson spoke to her about Hobson's HIV-positive status. Because Hobson offers no evidence to refute the testimony of Raymond Jackson or Tonya Jackson on these points, there is insufficient evidence to support a finding that Raymond Jackson, while president of Local 689, publicized Hobson's HIV-positive status.

For these reasons, the Court finds that Hobson's invasion of privacy claim cannot succeed because the evidence is insufficient to establish that the individual who engaged in the disclosure of his HIV-positive status was an employee or agent of Local 689 at the time of the disclosure.

### III. Publicity

Even if the Court could find that the disclosure of Hobson's HIV-positive status could be attributed to Local 689, the invasion of privacy claim would still fail because the record evidence is insufficient to establish the element of publicity. As discussed above, the invasion of privacy claim asserted here requires proof that the defendant "g[ave] publicity to a matter concerning the private life of another." *Hollander*, 351 A.2d at 425. For purposes of such a claim, "publicity" requires that "[t]he disclosure of the private facts must be a public disclosure and not a private one." *Id.* at 426. "[T]he matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. "[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even

9

to a small group of persons." *Id.*; *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1118 (Md. Ct. Spec. App. 1986).   Publicity requires "public communication," rather than "private" communication, and includes by way of example "publication in a newspaper or a magazine," publication in "a handbill distributed to a large number of persons," a "broadcast over the radio," or a "statement made in an address to a large audience." Restatement (Second) of Torts § 652D cmt. a.

Here, Hobson has stated that based on Villatoro's disclosure of Hobson's HIV-positive status, approximately 15 people, all within Local 689 or TEHW, informed him that they had learned that fact. Viewing the evidence in the light most favorable to Hobson, the Court could reasonably infer that the actual number was higher, particularly where Tonya Jackson has identified four TEHW employees who were discussing that fact, and she has testified that the TEHW staff consisted of approximately 17 people and that at some point Hobson's HIV-status was "not a secret." T. Jackson Dep. at 165. The number of people who received this information thus could arguably exceed a "small group of persons," as would be necessary to support an invasion of privacy claim. *See Pemberton*, 502 A.2d at 1118. However, the means of disclosure is not consistent with a finding of publicity because it requires "public communication." Restatement (Second) of Torts § 625D cmt. a. Courts have found that disclosure of private information to co-workers in the workplace does not constitute publicity for purposes of an invasion of privacy claim. *See, e.g. Lindenmuth v. McCreer*, 165 A.3d 544, 558 (Md. Ct. Spec. App. 2017) (finding that the publicity element was not met where the private fact was disclosed to the defendant's "manager, or at most, to other employees in the [workplace]"); *see also Wells v. Thomas*, 569 F. Supp. 426, 437 (E.D. Penn. 1983) (in applying the requirements for an invasion of privacy under the Restatement of Torts, finding that the publicity element was not met when

the terms of a separation agreement were disclosed to two employees, including at a staff meeting, such that the information became "common knowledge" at the workplace, and stating that "[p]ublication to the community of employees at staff meetings and discussions between defendants and other employees" is different from the type of public disclosure required).

The fact that the disclosure was also made to employees of a different entity, TEHW, does not alter this conclusion. *See Williams v. Wicomico Cnty. Bd. of Educ.*, 836 F. Supp. 2d 387, 398 (D. Md. 2011) (finding that the disclosure of private information "to various private individuals at [plaintiff's] prospective employers" was insufficient to establish publicity). Likewise, the disclosure of Hobson's HIV-positive status among certain TEHW and Local 689 employees was not a "public communication" along the lines of publication in the media or some other manner that would make it "substantially certain" that the private fact would "become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. Thus, even if the disclosures were attributable to Local 689, the record evidence is insufficient to establish the requirement of publicity. The Court will therefore grant the Motion on this basis as well.

In so ruling, the Court does not minimize the harmful nature of the unauthorized disclosure of Hobson's medical information, which likely violated HIPAA. *See* 42 U.S.C. § 13320d-6 (prohibiting the knowing disclosure of individually identifiable health information to another person and providing for penalties including imprisonment and fines). *But see Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (noting that HIPAA does not include a private right of action and "delegates enforcement authority to the Secretary of . . . Health and Human Services"). The Court also does not foreclose the possibility that the facts underlying the invasion of privacy claim may be relevant and admissible evidence on certain claims remaining in this case. The Motion,

however, will be granted, and judgment will be entered in favor of Local 689 on the invasion of privacy claim.

## CONCLUSION

For the foregoing reasons, Local 689's Motion for Partial Summary Judgment will be GRANTED. A separate Order shall issue.

Date: March 11, 2024

THEODORE D. CHUANG
United States District Judge